AMERICAN EMPLOYERS INSURANCE COMPANY, Fidelity & Casualty Company of New York, Granite State Insurance Company, Pacific Employers Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, International Insurance Company, Transcontinental Insurance Company, and Continental Insurance Company, Appellants–Defendants,

v.

COACHMEN INDUSTRIES, INC., and Coachmen Industries of Texas, Inc., Appellees–Plaintiffs.

No. 20A03–0412–CV–567.

Court of Appeals of Indiana.

Dec. 14, 2005.

Martha S. Hollngsworth, Candace L. Sage, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants Fidelity & Casualty Company of New York, Transcontinental Ins. Co. and Continental Ins. Co.

Robert T. Sanders, III, Sanders Pianowski, LLP, Elkhart, IN, Attorney for Appellants Pacific Employers Ins. Co. and International Ins. Co.

Don G. Blackmond, Doran Blackmond LLP, South Bend, IN, Attorney for Appellants National Union Fire Ins. Co. of Pittsburgh, PA and Granite State Ins. Co.

William G. Stone, Stone & Moore, Chtd., Chicago, IL, Attorney for Appellant American Employers Ins. Co.

Thomas A. Barnard, Thomas F. O'Gara, Sommer Barnard Attorneys, PC, Indianapolis, IN, John D. Ulmer, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, LLP, Goshen, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Defendants—numerous insurance companies—appeal the trial court's granting of Coachmen Industries, Inc. ("Coachmen") and Coachmen Industries of Texas, Inc.'s ("CIT") Motion for Partial Summary Judgment on Choice of Law.[1] The dispute at the center of this interlocutory appeal centers upon whether, as advocated by Coachmen, the substantive law of Indiana or whether, as advocated by the defendant insurance companies, the substantive law of Texas should apply. The trial court determined that the substantive law of Indiana should apply. Because Indiana is the state with the most intimate contacts— as set forth by Indiana case law and the Restatement (Second) of Conflicts § 188 and § 193—we affirm the trial court.

### Facts and Procedural History

Coachmen is an Indiana corporation with its principal place of business in Elkhart, Indiana. Coachmen is a manufacturer of recreational vehicles, modular buildings, and other products under various brand names through subsidiaries, and Coachmen conducts such manufacturing at facilities throughout the United States. Nonetheless, the bulk of Coachmen's products are manufactured in Elkhart County, Indiana ("Elkhart County").[2] In addition, Coachmen has consistently maintained its headquarters there. CIT is a Texas corporation incorporated in 1970, Appellants' App. p. 397–400, with its principal office during the relevant time period in Elkhart, Indiana, *id.* at 281, and its principal place of business in Grapevine, Texas. *Id.* at 430. CIT is a wholly-owned subsidiary of Coachmen, *id.* at 281, and Coachmen "was always the parent and sole shareholder of [CIT]." *Id.* at 379, 748. CIT is currently an inactive subsidiary of Coachmen, Appellees' App. p. 807, and has been since at

1. The insurance companies' April 8, 2005, "Motion to Expedite Appeal" pursuant to Indiana Appellate Rule 21 is hereby denied.

2. An examination of the Coachmen facilities between 1972 and 1992 shows that the percentage of Coachmen facilities that were located in Indiana ranged from 31% (in 1976) to 68.8% (in 1992). Appellants' App. p. 286–89, 293, 295, 297, 299. Even during 1976, the year with the lowest percentage of Coach-

men facilities in Indiana, Coachmen still maintained more facilities in Indiana than in any other single state. *Id.* at 287. Moreover, an examination of the number and location of Coachmen employees by state between the years of 1977 and 1992 shows that the percentage of Coachmen's total workforce located in Indiana ranged from 61.3% (in 1986) to 77.4% (in 1991). *Id.* at 289–90.

least 1990. *See* Appellants' App. p. 540.[3] In fact, CIT has had no employees since 1991. *Id.* at 303.

The defendants, American Employers Insurance Company ("American"), Granite State Insurance Company ("Granite"), Pacific Employers Insurance Company ("Pacific"), National Union Insurance Company of Pittsburgh, PA ("National"), International Insurance Company ("International"), Transcontinental Insurance Company ("Transcontinental"), and Continental Insurance Company ("Continental") (collectively "the insurance companies"), wrote and sold comprehensive general liability ("CGL") insurance policies to Coachmen for risks incurred by Coachmen and its subsidiaries. *Id.* at 570. Neither CIT nor any other Coachmen subsidiary purchased CGL insurance separate from the policies purchased by Coachmen; in addition, Coachmen's subsidiaries did not decide which CGL policies to purchase. *Id.* Coachmen "included CIT within the definition of 'named insured' or identified it as an 'additional named insured' in each of the policies at issue in this case either by specifically naming CIT or by referring to all of Coachmen's subsidiaries on the 'named insured' endorsement." *Id.* Coachmen communicated about its insurance contracts either in person at its Elkhart County headquarters or over the telephone or fax machine from its Indiana headquarters. *Id.* at 309–10. Coachmen executed its insurance contracts at its headquarters. *Id.* at 310. Importantly for the resolution of the instant case, however, the policies did not include a choice of law clause to use in construing its terms.

In 1975, Coachmen leased a manufacturing facility located in Grapevine, Texas ("Grapevine Site") with an option to purchase. *Id.* at 610, 623. Coachmen decided to exercise this option in 1976. *Id.* at 629. The title of the Grapevine Site was conveyed from the seller to CIT. *Id.* at 631. The Grapevine Site was closed by Coachmen in 1985. *Id.* at 70. In 1997, Coachmen first received notice that the owners of land adjacent to the Grapevine Site were alleging that environmental contamination from the Grapevine Site had migrated to their land. CIT subsequently entered into a "Voluntary Cleanup Agreement" ("VCA") with the Texas Natural Resource Conservation Commission. *See id.* at 406–413. In the text of the VCA, CIT indicated that all correspondence to be submitted to CIT should be mailed or faxed to an Elkhart address or phone number. *Id.* at 407. Moreover, one of Coachmen's Executive Vice Presidents was the contact person for the VCA. *Id.* at 606. To date, Coachmen has spent over $1,000,000 to remedy the contamination.

On July 26, 2000, Coachmen and CIT filed a joint complaint against the insurance companies in two counts: (1) breach of contract and (2) tortious breach of the duty of good faith and fair dealing, and the complaint was amended on July 29, 2003.[4] On April 12, 2004, Coachmen and CIT filed a joint motion for partial summary judgment on choice of law and in so doing argued that Indiana law governs the interpretation of the insurance contracts at issue in this case. On June 21, 2004, the insurance companies filed a motion in opposition to Coachmen and CIT's motion for partial summary judgment and cross-mo-

---

**3.** CIT has an "active entity status" as a domestic business corporation according to the Texas Secretary of State's Office. *See id.* at 743.

**4.** In both the original complaint and the amended complaint there are insurance companies named as defendants who are apparently no longer part of the case and, in any event, are not parties on appeal. *See* Appellants' App. p. 64, 164.

tion for partial summary judgment. The insurance companies, in arguing that they are entitled to summary judgment, asserted that the law of Texas should govern the case. Each side asserted that the law of different states applies because the decision of what state's law to apply—either Indiana or Texas—will most likely determine who prevails on the merits of the complaint. The trial court, following a hearing, issued an order granting Coachmen and CIT's motion for partial summary judgment on the choice of law issue—ruling that Indiana law applies—and denying the insurance companies' cross-motion for partial summary judgment. The insurance companies now appeal.

### Discussion and Decision

█ Our standard of review when considering a ruling on a motion for summary judgment is well settled, and it is the same standard used by the trial court. *Union Sec. Life Ins. Co. v. Acton,* 703 N.E.2d 662, 664 (Ind.Ct.App.1998), *trans. denied.* We construe the designated evidence in a light most favorable to the nonmoving party and determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* As is true with other contracts, the interpretation of an insurance policy is a question of law. *Vann v. United Farm Family Mut. Ins. Co.,* 790 N.E.2d 497, 502 (Ind.Ct.App.2003), *trans. denied,* 804 N.E.2d 751 (Ind.2003). Thus, cases involving interpretation of insurance policies are particularly appropriate for summary judgment. *Id.* Before engaging in a choice of law analysis, there must be a conflict between the states' laws. *See Travelers Indem. Co. v. Summit Corp. of Am.,* 715 N.E.2d 926, 930–31 (Ind.Ct.App.

1999). The parties allege that there is a conflict between the pertinent insurance law of Indiana and of Texas, *see* Appellants' Br. p. 10 n. 3, Appellees' Br. p. 1 (framing the issue as "[w]hether Indiana or Texas substantive law governs insurance contracts...."), and for the purposes of our analysis, we will assume that a conflict exists. When faced with a choice of law question, the decision is made by the courts of the state in which the suit is pending. *Schaffert v. Jackson Nat'l Life Ins. Co.,* 687 N.E.2d 230, 232 (Ind.Ct.App. 1997), *trans. denied.* Consequently, choice of law questions are particularly appropriate for summary judgment.

The parties are substantially in agreement as to the current state of Indiana law on choice of law that governs this case, although each side argues that the law favors its position. The parties assert that three principal cases from Indiana govern the resolution of this matter. *See Employers Ins. of Wausau v. Recticel Foam Corp.,* 716 N.E.2d 1015 (Ind.Ct.App.1999), *reh'g denied, trans. denied; Summit,* 715 N.E.2d 926; *Hartford Accident & Indem. Co. v. Dana Corp.,* 690 N.E.2d 285 (Ind.Ct. App.1997), *trans. denied.* Indiana follows the approach formulated by the Restatement (Second) of Conflict of Laws when deciding which law to apply when there is a conflict.[5] *Summit,* 715 N.E.2d at 931; *Dana,* 690 N.E.2d at 291. To that end, the parties also contend that two sections of the Restatement (Second) of Conflict of Laws—§ 188 and § 193, but particularly the factors delineated in § 188(2)—are helpful to the resolution of this case, and the aforementioned Indiana cases upon which the parties rely interpret these Re-

---

**5.** The Restatement (Second) of Conflict of Laws has been recently criticized by our Supreme Court in its resolution of a conflict of laws issue in a tort action; the court, though, advocates adherence to the Restatement's ap-

proach in those tort actions in which the state where the tort occurred was an insignificant contact. *See Simon v. United States,* 805 N.E.2d 798, 804–07 (Ind.2004).

statement sections as well. Those sections provide:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.[6]

(2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

  (a) the place of contracting,

  (b) the place of negotiation of the contract,

  (c) the place of performance,

  (d) the location of the subject matter of the contract, and

  (e) the domicil, residence, nationality, place of incorporation and place of business.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

Restatement (Second) of Conflict of Laws § 188 (1971).

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be *the principal location of the insured risk during the term of the policy,* unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* § 193 (emphasis added). The above-quoted § 193 is useful in analyzing § 188(2)(d). *See Dana,* 690 N.E.2d at 293. We address the five factors in § 188(2) in turn.

■ As an initial matter, the insurance policies at issue in this case were negotiated by Coachmen on behalf of itself and all of its subsidiaries, including CIT, and the policies were purchased by Coachmen with CIT as a named insured. Indeed, CIT did not negotiate or pay for these policies. The ultimate issue in this lawsuit is the interpretation of the insurance contracts entered into by Coachmen for the benefit of it and all of its subsidiaries. Although we acknowledge the general rule that distinct corporations, even parent and subsidiaries, are presumed separate, *see Greater Hammond Cmty. Servs., Inc. v. Mutka,* 735 N.E.2d 780, 784 (Ind.2000), in this case the parent and subsidiary, CIT, did not act separately but rather acted through the parent company Coachmen in securing

---

**6.** Section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

these policies. For this reason, we frame the choice of law/contract interpretation issue as to the parties who entered into the contracts: Coachmen and the various insurance companies.

■ We begin by noting that Indiana's choice of law rule for actions on contract, where the parties have not made an effective choice of law, calls for applying the law of the forum with the most intimate contacts to the facts. *Recticel,* 716 N.E.2d at 1024; *Summit,* 715 N.E.2d at 931; *Dana,* 690 N.E.2d at 291. The court considers all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact. *Dana,* 690 N.E.2d at 291. We now turn our attention to the five factors in § 188(2).

■ Because it is the most easily disposed of, we address the fifth factor first. The fifth factor—domicil, residence, nationality, place of incorporation and place of business of the parties—is indeterminate for choice of law purposes because the parties have various domiciles. *Id.* at 293. Coachmen is an Indiana corporation with its principal place of business in Indiana. The insurance companies are foreign corporations of various states with various principal places of business. This factor does not favor either Indiana or Texas.

The first factor is the place of contracting. According to the comments in the Restatement, this factor is defined as "the place where occurred the last act necessary ... to give the contract binding ef-

fect." Restatement (Second) of Conflicts § 188 cmt. e (1971). The comments then explain:

> Standing alone, the place of contracting is a relatively insignificant contact. To be sure ... issues involving the validity of a contract will, perhaps in the majority of situations, be determined in accordance with the local law of the state of contracting. In such situations, however, this state will be the state of the applicable law for reasons additional to the fact that it happens to be the place where occurred the last act necessary to give the contract binding effect. The place of contracting, in other words, rarely stands alone and, almost invariably, is but one of several contacts in the state. Usually, this state will be the state where the parties conducted the negotiations which preceded the making of the contract. Likewise, this state will often be the state of the parties' common domicil as well. By way of contrast, the place of contracting will have little significance, if any, when it is purely fortuitous and bears no relation to the parties and the contract, such as when a letter of acceptance is mailed in a railroad station in the course of an interstate trip.

*Id.*

Turning to three Indiana cases, in *Dana,* we found that the place of contracting was indeterminate despite the insurer's contention that the place of contracting should be the state of the insured's primary place of business [7] and the insurer's assertion that the policies were "obtained in accordance with the countersignature laws and regula-

---

7. In *Dana,* we noted Indiana's rejection of the *lex loci contractus* approach to determine which forum's substantive law is applicable. *Dana,* 690 N.E.2d at 292; *see also Summit,* 715 N.E.2d at 932 ("[T]he mere fact that a policy holder is headquartered in a state does not mean that the law of that state controls."). *Lex loci contractus* has been defined as: "The law of the place where a contract is executed or to be performed." Black's Law Dictionary 930 (8th ed. 2004).

tions of [the state of the insured's primary place of business] for the portion of the risk located in [that state]." *See Dana,* 690 N.E.2d at 292–93. Our primary reason for finding the place of contracting indeterminate was that the countersignatures were primarily those of the insurer's authorized agent with whom the insured negotiated and who was located in a different state from the insured's primary place of business. *Id.* at 293. Thus, we held that the place of contracting favored neither of the two possible states.

We similarly found the place of contracting inconclusive in *Summit.* The insurer argued that Connecticut law should apply, whereas the insured argued for Indiana law to apply. The insured's corporate headquarters and the insurer's agent were located in Connecticut, and the insurer's primary place of business and state of incorporation was Illinois. *See Summit,* 715 N.E.2d at 932. We found that while there was no evidence regarding any contracting done in Indiana, the evidence that the contracting was done in Connecticut was inconclusive. *Id.*

Finally, we found the place of contracting was "not determinative" in *Recticel* where the insured managed its insurance affairs and maintained the policies from Indiana and where Indiana employees purchased the policies, paid the premiums, and resolved disputes relating to the policies. However, the insured sometimes listed its address as Indiana and sometimes as New York, the location of its broker. *See Recticel,* 716 N.E.2d at 1024. The policies themselves were issued from the insurer's New York office.

■ In light of these three cases, we turn to the facts of this case. Coachmen is an Indiana corporation with its principal place of business in Indiana. Coachmen communicated about its insurance contracts either in person at its Indiana head-quarters or over the telephone or fax machine from its headquarters. Moreover, Coachmen executed its insurance contracts in Indiana. In contrast, each of the insurance companies is "a foreign corporation," Appellees' Br. p. 3, none of whom are alleged to have been headquartered, incorporated, or maintained a principal place of business in Texas. The insurance companies' brokers negotiated the contracts with Coachmen from different states, although at least two were located in Indiana and none were located in Texas. *See* Appellants' App. p. 373–75. Thus, we are left with a situation most similar to *Summit* where there is no evidence of any contracting in Texas. Consistent with this Court's precedent, we cannot say that the place of contracting is determinate, despite Coachmen's strong ties to Indiana. Essentially, we cannot conclusively point to Indiana as being the state where "the last act necessary" to give the contract binding effect occurred, although it seems highly plausible that Indiana was, and it would not be simply fortuitous that the last act necessary occurred in Indiana because of Coachmen's ties to Indiana. *See* Restatement (Second) of Conflicts § 188 cmt. e (1971). Nonetheless, we conclude that the first factor is indeterminate.

The second factor is the place of negotiation. According to the Restatement commentary:

The place where the parties negotiate and agree on the terms of their contract is a significant contact. Such a state has an obvious interest in the conduct of the negotiations and in the agreement reached. This contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.

*Id.* In *Summit,* we held that the place of negotiation was also indeterminate where: (1) the insurer provided no evidence that the negotiation took place in Connecticut despite the fact that the front page of the contract showed that the insurer had an office in Connecticut and (2) where there was evidence that the policies were signed and endorsed in Illinois. This court held that it was unclear whether the negotiation took place in Connecticut or Illinois and that the place of negotiation is less important where there was not evidence of one single place of negotiation and where the parties conducted negotiation by mail or phone. *Summit,* 715 N.E.2d at 932. We similarly found the place of negotiation unclear in *Recticel* where the insurer claimed that the policies were negotiated in New York and the insured claimed that the policies were negotiated in Indiana. Indeed, we pointed out that it was "likely that at least some negotiation occurred in both states." *Recticel,* 716 N.E.2d at 1024.

■ In this case, Coachmen itself admits that some negotiation between it and its broker for insurance policies took place in person at its Indiana headquarters and some took place over the telephone or fax with Coachmen's end of the communications occurring in Indiana. *See* Appellants' App. p. 309–10. Thus, we are left with a situation similar to *Summit* where there has been no evidence produced that there were negotiations in Texas and there is evidence that at least some negotiation was done in person and some was done by mail, fax, or phone. In other words, there is not a single place of negotiation. We conclude that, just as in *Recticel,* it is likely that some negotiation occurred in states other than Indiana. Thus, we cannot say that the place of negotiation is conclusive.

■ The third factor is the place of performance. We have heretofore ex-plained that the place of performance "is the location where the insurance funds will be put to use." *Dana,* 690 N.E.2d at 293; *see also Recticel,* 716 N.E.2d at 1024; *Summit,* 715 N.E.2d at 932. The comments to the Restatement indicate that the place of performance "can bear little weight in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown...." Restatement (Second) of Conflicts § 188 cmt. e (1971). In this case, the funds will be put to use in Texas, as that is the state in which the Grapevine Site is located. However, this factor bears little weight in our choice of law determination because at the time of contracting, the place of performance was uncertain because of Coachmen's subsidiaries throughout the country, although they were primarily located in Indiana. *See Summit,* 715 N.E.2d at 933 (observing that similar to the fourth factor, the place of performance factor also relates to the location where potential liability will arise).

The fourth factor is the location of the subject matter of the contract or, in terms of § 193, the principal location of the insured risk during the policy's term. As to this fourth factor of the § 188 test, we have said that the "most important contact is the principal location of the insured risk during the term of the policy." *Id.* at 931. The rights created by the insurance contract are determined by the law of the state where the risk or subject matter is located. *Id.* The comments to the Restatement indicate that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Restatement (Second) of Conflicts § 193 cmt. b (1971).

■ Indiana follows the "uniform-contract-interpretation approach" when confronted with comprehensive general liability coverage of multi-state claims. *Dana,* 690 N.E.2d at 293. Under the uniform-contract-interpretation approach, "the law of a single forum governs the interpretation of coverage under a casualty-insurance policy for multi-state claims arising from environmental damage in multiple jurisdictions." *Id.*

In *Dana,* we held that because the other § 188 factors did not point primarily to one forum, the location of the subject matter or the principal location of the insured risk during the term of the policy, was to be accorded greater significance. In so holding, we said that "applying the uniform-contract-interpretation approach requires us to determine the state where the risk is principally located, even though some of the risk is scattered in other states." *Id.* at 294. The sites in *Dana* were scattered but were principally located in Indiana; we concluded that the principal location of the insured risk was Indiana and that the law of Indiana should apply to the case. Similarly, in *Summit,* we determined that the "principal location of the insured risk" is the state with the largest number of insured sites. *Summit,* 715 N.E.2d at 933; *see also Recticel,* 716 N.E.2d at 1024–25. This is so because as the number of sites increase, so does the risk of an occurrence. *Summit,* 715 N.E.2d at 933. Moreover, in *Summit* we declined to determine the principal location of the insured risk based upon the estimates of actual damage, rather we determined that "the 'risk' must be determined at the time the contract is formed." *Id.* at 933 n. 6. In other words, we take a prospective look to determine which law will be applied. *Id.*

■ In this case, the other § 188 factors do not primarily point to one forum. The first, second and fifth factors are indeterminate, but the first and the second favor Indiana as opposed to Texas. The third factor, which bears little weight, favors Texas. Thus, this fourth factor is given greater significance. Thus, we will apply the uniform-contract-interpretation approach, and we determine that while Coachmen's risks were scattered throughout the country because of its numerous subsidiaries, Indiana is the principal location of the insured risk because Indiana is, and has always been, the state with the largest number of insured sites. Appellants' App. p. 286–89, 293, 295, 297, 299. Put another way, a prospective look at the time the contract was formed would lead to the conclusion that Indiana law should apply.

In the end, none of the § 188 factors is compelling or conclusive. However, the overall number and quality of contacts favor Indiana over Texas; therefore, the substantive law of Indiana should apply. The trial court was correct in so holding.

Affirmed.

SHARPNACK, J., and MAY, J., concur.