No. 3--06--0606

Filed April 10, 2007.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| VIRGINIA SURETY COMPANY, INC. | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| BILL'S BUILDERS, INC., a corporation, and | ) | |
| WILLIAM R. GEIGNER, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | No. 05-MR-0370 |
| | ) | |
| WILLIAM R. GEIGNER, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN-REUM INSURANCE AGENCY, INC., | ) | Honorable |
| | ) | Herman S. Haase, |
| Third-Party Defendant. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the opinion of the court:

_____

Plaintiff, Virginia Surety Company (Virginia Surety), brought action for declaratory judgment seeking a determination that William R. Geigner (Geigner) was not covered under the workers' compensation insurance policy of Bill's Builder's, Inc. (the corporation) and that Virginia Surety had no duty to make payment on Geigner's workers' compensation claim. Virginia Surety and Geigner filed cross motions for summary judgment. The trial court granted Geigner's motion for summary

judgment and denied Virginia Surety's motion. Virginia Surety appeals. We reverse the trial court's order granting Geigner's motion for summary judgment as to count one (coverage) and count two (reimbursement) of the complaint, affirm the trial court's order granting Geigner's motion for summary judgment as to count three (rescission) of the complaint, affirm the trial court's order denying Virginia Surety's cross-motion for summary judgment as to count three of the complaint, and remand this case for further proceedings consistent with this order.


FACTS

The facts as determined from the pleadings and other documents filed by the parties in the trial court are as follows. The corporation was involved in the construction business, an extra hazardous activity as defined by the Illinois Workers' Compensation Act (820 ILCS 305/3 (West 2004) (the Act)). Geigner was president of the corporation.

In March of 2002, the corporation applied for workers' compensation insurance through Ryan-Reum Insurance Agency (Ryan-Reum). The application was prepared by Thomas Ryan of Ryan-Reum and bore the alleged signature of Geigner. The business was described in the application as a one-man carpenter contractor business with no employees. Page two of the application contained a section entitled, "INDIVIDUALS INCLUDED/EXCLUDED", under which Geigner and his wife, Kristina (the secretary of the corporation), were listed. In a column labeled, "INC/EXC," the notation "Excl" was written in reference to both Geigner and Kristina. The "E", "c", and "l" in "Excl" were handwritten. The "x" was typewritten. The bottom of page two also bore the alleged signature of Geigner. After it was rejected by other carriers, the application was submitted for coverage through the National Council on Compensation Insurance (NCCI), the assigned risk pool

for workers' compensation insurance in Illinois.

In response to the application, Virginia Surety issued the workers' compensation insurance policy in question. The corporation was listed on the policy as the insured. The policy covered the period from April 3, 2002 to April 3, 2003. Attached to the policy was endorsement number WC000308, entitled, **"PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT"** (emphasis in original). The endorsement provided as follows:

"The policy does not cover bodily injury to any person described in the (s)chedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons."

Geigner and Kristina were listed in the schedule on the endorsement.

In March of 2003, Geigner suffered a spinal cord injury when he fell from a scaffold while working for the corporation. A claim was made against the workers' compensation insurance, however, coverage was denied. Geigner subsequently filed a claim with the Industrial Commission for workers' compensation benefits.

While the claim was pending, Virginia Surety filed in the trial court a three-count complaint for declaratory judgment.[1] Count one alleged that Virginia Surety had no duty to provide coverage for Geigner's injury because Geigner had been excluded from coverage. Count two alleged that if Virginia Surety was required to provide coverage for Geigner's injury, it was entitled to reimbursement from the corporation for all amounts paid with respect to the claim. Count three

---

[1]The complaint of relevance to this appeal is Virginia Surety's first amended complaint. We will refer to it here simply as "the complaint".

3

alleged that the policy should be rescinded because it was procured through a material misstatement.

Geigner filed a motion for summary judgment as to all three counts of the complaint alleging that he had not effectively been excluded from coverage or from operation of the Act. Geigner also filed a third-party complaint against Ryan-Reum alleging that Geigner's signature had been forged on the insurance application.

Virginia Surety opposed Geigner's motion for summary judgment and filed a cross-motion for summary judgment as to count three of the complaint (rescission). In support of its argument, Virginia Surety submitted, among other things, the deposition testimony of Ryan (the insurance agent). Ryan testified that he had provided different types of insurance to Geigner and Kristina over the past several years and had dealt "exclusively" with Kristina. In March of 2002, Kristina contacted Ryan and informed him that she needed a workers' compensation policy for their business. Kristina provided Ryan with the information necessary to prepare the application over the phone. Ryan discussed with Kristina the cost of the insurance with her and Geigner included in the policy and with her and Geigner excluded from the policy. Ryan knew that Kristina was familiar with the effect of exclusion because he and Kristina had previously discussed the matter in the context of a prior workers' compensation policy, in which Kristina and Geigner elected to be excluded from coverage. Kristina informed Ryan that she and Geigner were to be excluded from the policy. Ryan prepared the application as directed and mailed it to Kristina for her and Geigner to sign. The application was subsequently returned to Ryan in the mail in a signed condition. Ryan did not see who signed the application in Geigner's name and denied that he or a member of his office signed the application. Ryan testified that the "E", "c" and "l" were added to the application after it had been sent off to

4

NCCI. Although he could not remember clearly, Ryan believed that shortly after the application had been submitted, he was contacted by phone to clarify whether the "x" meant that Geigner and Kristina were to be included or excluded.

Further information regarding Geigner's signature on the application was provided in a request to admit facts. In response to the request, Geigner acknowledged that Kristina had conversations with Ryan regarding purchasing workers' compensation coverage for the corporation. Geigner asserted, however, that he did not sign the application for insurance and that he did not know who did.

In support of its motion, Virginia Surety also tendered the affidavit of the underwriter of the policy, Joyce Johnson. Johnson attested that Virginia Surety issued the policy with the understanding that Geigner and his wife were to be excluded from coverage. The premium amount charged was based upon that exclusion. Johnson attested further that she learned after the policy had been issued that Geigner's signature on the application was not genuine, and that had Virginia Surety known that Geigner's signature was a forgery, it would have rejected the application for insurance.

After considering the pleadings and all of the other documents filed in the trial court, the trial judge granted Geigner's motion for summary judgment and denied Virginia Surety's motion. This appeal followed.


ANALYSIS

Virginia Surety first argues that the trial court erred in granting summary judgment in favor of Geigner as to count one (coverage) and count two (reimbursement) of the complaint. Virginia Surety asserts that Geigner effectively excluded himself from coverage under the insurance policy and

5

under the Act and thus was barred from making a workers' compensation claim. Geigner argues that because Virginia Surety did not notify Geigner that an exclusion from insurance coverage also served to exclude Geigner from the protection of the Act, the exclusion was ineffective and void. See General Cas. Co. of Illinois v. Carroll Tiling Service, Inc., 342 Ill. App. 3d 883, 892-897, 796 N.E. 2d 702, 709-713 (2003).

Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); In re Estate of Muppavarapu, 359 Ill. App. 3d 925, 928, 836 N.E. 2d 74, 76-77 (2005). In appeals from summary judgment rulings, our standard of review is de novo. Muppavarapu, 359 Ill. App. 3d at 928, 836 N.E. 2d at 77.

The protections of the Act automatically apply to certain businesses declared to be extra hazardous. 820 ILCS 305/3 (West 2004). An employer involved in such a business, therefore, may purchase an insurance policy to insure its entire workers' compensation liability. 820 ILCS 305/4(a)(3) (West 2004); General Cas. Co. of Illinois, 342 Ill. App. 3d at 894, 796 N.E. 2d at 710. Such a policy, however, must cover all of the employees and the entire workers' compensation liability of the employer. 820 ILCS 305/4(a)(3) (West 2004); General Cas. Co. of Illinois, 342 Ill. App. 3d at 894, 796 N.E. 2d at 711. Any attempt by an insurance carrier to limit its liability, except as provided for in the Act, is void. See 820 ILCS 305/4(a)(3) (West 2004); General Cas. Co. of Illinois, 342 Ill. App. 3d at 895, 796 N.E. 2d at 711.

One such limitation provided for in the Act applies to extra hazardous businesses. A corporate officer of such a business may elect to withdraw from the operation of the Act. 820 ILCS

305/3(17)(b) (West 2004); General Cas. Co. of Illinois, 342 Ill. App. 3d at 892-893, 796 N.E. 2d at 709. The procedure for doing so is stated in section 3(17)(b) of the Act, which provides as follows:

> "The corporate officers of any domestic or foreign corporation employed by the corporation may elect to withdraw themselves as individuals from the operation of this Act. Upon an election by the corporate officers to withdraw, written notice shall be provided to the insurance carrier of such election to withdraw, which election shall be effective upon receipt by the insurance carrier of such written notice. A corporate officer who thereafter elects to resume coverage under the Act as an individual shall provide written notice of such election to the insurance carrier which election shall be effective upon receipt by the insurance carrier of such written notice. For the purpose of this paragraph, a "corporate officer" is defined as a bona fide President, Vice President, Secretary or Treasurer of a corporation who voluntarily elects to withdraw." 820 ILCS 305/3(17)(b) (West 2004).

A corporate officer who withdraws from the protection of the Act cannot file a claim for workers' compensation benefits. General Cas. Co. of Illinois, 342 Ill. App. 3d at 893, 796 N.E. 2d at 709.

In the present case, to determine if summary judgment was properly granted in favor of Geigner, we must determine if Geigner effectively withdrew from the operation of the Act in the application for insurance. Absent such a withdrawal, the protections of the Act automatically apply to Geigner and coverage for Geigner must be provided for in the insurance policy. See 820 ILCS 305/3, 4(a)(3) (West 2004); General Cas. Co. of Illinois, 342 Ill. App. 3d at 894, 796 N.E. 2d at 711.

7

Unless Geigner effectively withdrew from operation of the Act, any attempt to exclude him from the protection of the insurance policy or of the Act is void. See 820 ILCS 305/4(a)(3) (West 2004); General Cas. Co. of Illinois, 342 Ill. App. 3d at 895, 796 N.E. 2d at 711.

The exact issue before us in this case was addressed by the Second District Appellate Court in General Cas. Co. of Illinois v. Carroll Tiling Service, Inc. In General Casualty, the corporation sought to reduce its premium costs for workers' compensation insurance. General Cas. Co. of Illinois, 342 Ill. App. 3d at 887, 796 N.E. 2d at 705. Prior to being injured, the individual defendant (the vice president of the corporation) executed a written form requesting to be excluded from coverage under the corporation's workers' compensation policy. General Cas. Co. of Illinois, 342 Ill. App. 3d at 887, 796 N.E. 2d at 705. The form was entitled "Illinois Workers Compensation Benefits Rejection Form," bore the legend, "**NOTICE TO BUSINESS OWNERS OR PARTNERS** (emphasis in original)," and provided as follows:

> "If you are either the sole owner of your business or a business partner, Illinois' workers compensation law automatically applies to you. This means that you are automatically covered under your business workers compensation policy and that your payroll will be included when we calculate the premium for your policy. If you do not want to be covered under this policy, you must specifically reject the coverage by signing this form and returning it to your agent." General Cas. Co. of Illinois, 342 Ill. App. 3d at 887-888, 796 N.E. 2d at 705.

After reviewing the rejection form and construing the language of the statute, the appellate court found that the rejection form did not effectively remove the individual defendant from the operation

of the Act. General Cas. Co. of Illinois, 342 Ill. App. 3d at 892-897, 796 N.E. 2d at 709-713. In reaching that conclusion, the appellate court noted that the form applied only to insurance coverage, did not mention withdrawal from the operation of the Act or rejection of benefits under the Act, and was directed to a sole proprietor or business partner (the individual defendant was neither). General Cas. Co. of Illinois, 342 Ill. App. 3d at 892-897, 796 N.E. 2d at 709-713.

We do not agree with the Second District Appellate Court's statutory analysis in General Casualty. There is no rule of statutory construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports. Kunkel v. Walton, 179 Ill. 2d 519, 534, 689 N.E. 2d 1047, 1054 (1997). A court is not at liberty to depart from the plain language of a statute by reading into it exceptions, limitations or conditions that the legislature did not express. Kunkel, 179 Ill. 2d at 534, 689 N.E. 2d at 1054. Although the election must be in strict conformity with the statute, section 3(17)(b) of the Act merely requires that the corporate officer take affirmative action by making an election to be excluded from operation of the Act and that the insurance carrier be notified of the election in writing. 820 ILCS 305/3(17)(b) (West 2004). The statute does not require that any special language be used in the election form to opt out from the operation of the Act and from coverage of insurance. Nor does the statute require the insurance carrier to take further action, upon receiving the written notice, to confirm that the corporate officer understands that by opting out of coverage of the insurance policy, he is giving up the right to make a claim under the Act. It would be improper for this Court to require either party to take affirmative action not required by the statute before the election to withdraw from the operation of the Act can be effective.

In the case before us, Geigner allegedly indicated on an application for insurance that he

9

wanted to be excluded from coverage of the insurance policy. If we assume for the purpose of this particular analysis that Geigner's signature is valid or authorized, and considering the election in the context of which it was made (an application for workers' compensation insurance), the application would be sufficient under the statute to exclude Geigner from coverage and to provide Virginia Surety with written notice of that election. See 820 ILCS 305/3(17)(b) (West 2004). No additional language is necessary. Nor is Virginia Surety required to take affirmative action to confirm that Geigner understood the consequences of his election. Considered in context, the application is sufficient to indicate an objective affirmative action to effectively withdraw Geigner from operation of the Act. If the alleged signature is not valid or not authorized, then there is no evidence of a valid objective affirmative election to withdraw from the operation of the Act.

An issue of material fact remains, however, as to whether Geigner actually made the election. Virginia Surety has presented evidence to suggest that Geigner, or someone with authority to act on Geigner's behalf, elected to be excluded from the coverage of the insurance policy and signed the application. The application bears the alleged signature of Geigner. Ryan (the insurance agent) testified that Kristina was familiar with the consequences of opting out of coverage because she and Geigner had opted out of coverage in a previous workers' compensation insurance policy. Ryan testified further that he mailed the application to Kristina for her and Geigner to sign and that he received the application back in a signed condition.

Geigner, however, has presented evidence to the contrary. Geigner testified that he did not sign the application and that he does not know who did. In addition, Geigner's position is advanced by some of the evidence presented by Virginia Surety. Virginia Surety's underwriter acknowledged that Geigner's signature on the application for insurance was not genuine. Further, Ryan testified that

10

his only contact in this case was Kristina. Ryan never explained the exclusion to Geigner or received Geigner's instruction to prepare the application with Geigner excluded. The application, which was sent out to be signed, merely contained an "x" in the column labeled, "INC/EXC," without any reference to whether Geigner was to be included or excluded. The "E", "c", and "l" were written on the application (to complete the abbreviation "Excl") after the application had been submitted.

Thus, an issue of material fact remains as to whether Geigner, or someone authorized to act on his behalf, actually made the election. Because an issue of material fact remains, it was error for the trial court to grant summary judgment in favor of Geigner as to count one (coverage) and count two (reimbursement) of the complaint. This case must be remanded for further proceedings to resolve that issue of fact.

Virginia Surety argues next that the trial court erred in granting Geigner's motion for summary judgment as to count three of the complaint (rescission) and in denying Virginia Surety's cross motion for the same. Virginia Surety asserts that the policy was issued based on the material misstatement of Geigner or Geigner's agent that Geigner was to be excluded from insurance coverage. As noted above, in appeals from summary judgment rulings, our standard of review is de novo. Muppavarapu, 359 Ill. App. 3d at 928, 836 N.E. 2d at 77.

Before we reach the merits of Virginia Surety's argument, we must first address Geigner's contention that Virginia Surety's claim for rescission is time barred. Section 154 of the Insurance Code provides that policies for certain types of insurance shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less. 215 ILCS 5/154 (West 2004). As Virginia Surety correctly notes, however, the one-year limitation only applies to automobile

11

insurance, fire and extended coverage insurance, and all other policies of personal lines (any other policy of insurance issued to a natural person for personal or family protection). 215 ILCS 5/154, 143.13 (West 2004). Thus, the one-year limitation does not apply in the present case. See 215 ILCS 5/154, 143.13 (West 2004).

Having rejected Geigner's timeliness argument, we now turn to the merits of Virginia Surety's claim for rescission. Under the Insurance Code, no misrepresentation in a written insurance policy application shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the company. 215 ILCS 5/154 (West 2004); Ratcliffe v. International Surplus Lines Ins. Co., 194 Ill. App. 3d 18, 25, 550 N.E. 2d 1052, 1057 (1990). A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer. Ratcliffe, 194 Ill. App. 3d at 25, 550 N.E. 2d at 1057. A material misrepresentation will void the contract even though made through mistake or good faith. Ratcliffe, 194 Ill. App. 3d at 25, 550 N.E. 2d at 1057. In other words, it is unnecessary for the insurer to prove that a misrepresentation was made with the intent to deceive if it was material to the risk assumed. Ratcliffe, 194 Ill. App. 3d at 25, 550 N.E. 2d at 1057.

In the cross-motion for summary judgment, Virginia Surety argues that Geigner, or someone who had the authority to act on his behalf, made a false statement in the application for insurance that Geigner was to be excluded from the operation of the Act, and thus, from insurance coverage. The facts presented before the trial court, however, do not support Virginia Surety's contention. Geigner either made (or authorized) the election or did not make (or authorize) the election. Thus, there is no indication that Geigner made a false statement in the application for insurance, and Virginia

12

Surety's claim for rescission must fail.

The trial court, therefore, properly granted Geigner's motion for summary judgment as to count three of the complaint (rescission) and denied Virginia Surety's cross motion for the same. It is of no consequence that the trial court seems to have based its entire ruling on the ineffectiveness of the withdrawal form. In reviewing a trial court's grant of summary judgment, we may affirm the trial court's decision on any ground in the record, regardless of whether the trial court relied on that ground or whether the trial court's reasoning was correct. Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co., 355 Ill. App. 3d 156, 163, 821 N.E. 2d 706, 712 (2004).

For the foregoing reasons, we reverse the judgment of the Circuit Court of Will County granting Geigner's motion for summary judgment as to count one (coverage) and count two (reimbursement) of the complaint, affirm the judgment of the Circuit Court of Will County granting Geigner's motion for summary judgment as to count three (rescission) of the complaint, affirm the judgment of the Circuit Court of Will County denying Virginia Surety's cross-motion for summary judgment as to count three of the complaint, and remand this case for further proceedings consistent with this order.

Reversed in part and affirmed in part; case remanded.

LYTTON, P. J. and O'BRIEN, J. concur.